IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ELIZABETH A. CLAUSEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 06-2569-JWL |
| ) | |
| MICROTECH COMPUTERS, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**MEMORANDUM AND ORDER**

In this action, plaintiff asserts claims against her former employer, defendant Microtech Computers, Inc., for pregnancy discrimination and retaliation under Title VII of the Civil Rights Act of 1964, and for the tort of outrage under Kansas state law. The matter comes before the Court at this time on defendant's motion for summary judgment (Doc. # 22). For the reasons set forth below, the motion is granted in part and denied in part. The motion is granted with respect to plaintiff's discrimination claim to the extent that it is based on her allegation that defendant gave her three options regarding her continued employment. The motion is also granted with respect to plaintiff's state-law outrage claim. The motion is denied, however, with respect to plaintiff's claims of discrimination and retaliation arising from the termination of her employment by defendant.

**I.      Facts**[1]

Defendant is a company located in Lawrence, Kansas, that sells computers and related products and services. In October 2004, plaintiff was promoted to the position of assembly manager for defendant, in which she supervised eight to ten other employees. Plaintiff reported to Dana Chang, who owned defendant with her husband. Sometime after her promotion, plaintiff informed Ms. Chang that she was pregnant. Ms. Chang and plaintiff discussed plaintiff's pregnancy on occasion, including the fact that plaintiff's pregnancy would be high-risk in light of plaintiff's age and medical history.

On December 16, 2004, Ms. Chang initiated a meeting with plaintiff to discuss various issues with plaintiff's job performance. Prior to that meeting, plaintiff had not received any negative performance evaluations or reviews while employed by defendant. At the meeting, Ms. Chang brought up a few different criticisms of plaintiff's job performance. Plaintiff did not respond to these criticisms. Ms. Chang then gave plaintiff three different options regarding her continued employment. First, Ms. Chang stated that plaintiff could take a medical leave of absence until she gave birth. Second, Ms. Chang stated that plaintiff could take a less stressful position within the company, although Ms. Chang and plaintiff did not discuss a particular position or whether plaintiff's salary would be different. Third, Ms. Chang stated that plaintiff could also wait around to be fired just as a lot of other employees would be. Plaintiff then indicated that she would

---

[1] These facts are uncontroverted or are related in the light most favorable to plaintiff, in accordance with the applicable standards for summary judgment.

think about what she wanted to do, and the meeting ended.

In her deposition, plaintiff conceded that she considered only the first option to be discriminatory based on her pregnancy. She also conceded that Ms. Chang gave the first two options out of a concern for plaintiff's health and in an attempt to allow plaintiff to keep her job.

On Friday, December 17, 2004, plaintiff asked for and received the day off. She visited her physician, who, in lieu of prescribing medications that could be harmful to the baby, recommended that plaintiff smoke a cigarette or two if necessary to combat stress (plaintiff had quit smoking upon learning of her pregnancy). On December 17 and 18, 2004, plaintiff composed a letter to defendant, in which she summarized the performance criticisms and three choices given by Ms. Chang at the December 16 meeting. Plaintiff stated in the letter that any such decision was for Ms. Chang to make, not plaintiff. Finally, plaintiff stated that she had been informed of her rights "under Title VII – sex discrimination & retaliation," and that she planned to file a complaint with the Lawrence Human Relations Commission and the Equal Employment Opportunity Commission.

Plaintiff placed the letter on Ms. Chang's computer first thing in the morning on Monday, December 20, 2004. Later that day, Ms. Chang called a company-wide meeting, which was attended by most of defendant's employees, to conduct a moment of silence for a former employee who had died. Ms. Chang then informed the employees of plaintiff's letter, and she proceeded to read the letter aloud to the employees. With

respect to the medical leave option, Ms. Chang stated that they had just lost one life, and that they needed to think about the welfare of plaintiff's unborn child. Ms. Chang noticed that plaintiff looked "mad" during this discussion. Plaintiff indicated that her doctor did not believe that plaintiff needed a medical leave. Ms. Chang concluded by saying that she would not do anything with the letter. Afterwards, some other employees expressed their shock to Ms. Chang about the letter. Ms. Chang testified in her deposition that she did not know why she read the letter to the other employees. Ms. Chang and plaintiff did not discuss the letter before or after the company-wide meeting on December 20. Plaintiff did not seek any medical treatment at any time after December 20 with respect to any emotional distress caused by the public reading of the letter by Ms. Chang.

The next day, December 21, 2004, Ms. Chang called plaintiff into her office and asked her for certain information, including information she had requested from plaintiff during the December 16 meeting. Plaintiff indicated that she would need to return to her own desk to retrieve such information. Ms. Chang became agitated at that point and followed plaintiff to her desk. Ms. Chang then repeatedly asked plaintiff whether she had a bad attitude, and she stated that plaintiff should just go home and take the day off because she had a bad attitude. Plaintiff did not respond other than to state that she did not have a bad attitude and did not need to take the day off. Ms. Chang then terminated plaintiff's employment. Ms. Chang testified in her deposition that the reason for the termination was plaintiff's insubordination on that occasion.

## II.     Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006). An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way." *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006). A fact is "material" when "it is essential to the proper disposition of the claim." *Id*.

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon his or her pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof."

*Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 910th Cir. 2005). To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### III.    Gender Discrimination

#### A.    *Defendant's Giving Three Employment Options*

Plaintiff alleges that defendant discriminated against her on the basis of her pregnancy—and therefore on the basis of her gender—in violation of Title VII. In the pretrial order, plaintiff has alleged two separate acts of discrimination—defendant's giving her the three options on December 16, 2004, and her termination on December 21, 2004.

Defendant argues that plaintiff cannot maintain a discrimination claim based on the giving of the three options because that conduct does not represent an adverse employment action. The substantive discrimination provisions of Title VII, 42 U.S.C. § 2000e-2(a), are limited to adverse actions that affect employment or alter the conditions of the workplace. *See Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir.

2007) (citing *Burlington Northern & Santa Fe Ry. v. White*, __ U.S. __, 126 S. Ct. 2405, 2412 (2006)). "Adverse employment action includes 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Id.* (quoting *Hillig v. Rumsfeld*, 381 F.3d 1028, 1032-33 (10th Cir. 2004)). "[M]ere inconvenience or an alteration of job responsibilities" is not considered an adverse employment action for this purpose. *Id.* (quoting *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998)).

Defendant argues that plaintiff may not base her discrimination claim on the giving of the three options because plaintiff suffered no adverse employment action, such as termination or an alteration in her pay, at that time.[2] The Court agrees with defendant. Although plaintiff has provided evidence that defendant gave her the three options on December 16, 2004, she has not provided any evidence that she actually suffered any negative consequences with respect to her employment at that time. Plaintiff has not alleged a claim of hostile work environment; therefore, under Title VII, plaintiff must base her claim of discrimination on an adverse employment action. A threat regarding her job status, separate from the actual carrying out of that threat, does not constitute the necessary adverse action. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753-54 (1998) (unfulfilled threats not resulting in tangible employment action are actionable

---

[2]Plaintiff did not respond to this argument in her brief.

under Title VII only by means of a hostile work environment claim); *Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1268-69 (10th Cir. 2005) (affirming summary judgment granted on the basis that an unrealized threat of termination did not constitute an adverse employment action); *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1381 (10th Cir. 1994) (threat of more frequent evaluations that was not carried out did not constitute adverse employment action); *An v. Regents of Univ. of Cal.*, 94 Fed. App'x 667, 673 (10th Cir. Feb. 2, 2004) (unpub. op.) (job insecurity did not constitute adverse employment action); *cf. Jeffries v. State of Kan.*, 147 F.3d 1220, 1232-33 (10th Cir. 1998) (question of fact existed regarding whether threats regarding future opportunities could constitute an adverse employment action specifically in the educational context in which supervision is unusually dependent upon personal interaction with the student).

Defendant's act in giving plaintiff the three options regarding her employment may be relevant to plaintiff's claim based upon her eventual termination. That act cannot in itself serve as the basis for such a claim, however. Accordingly, defendant is granted summary judgment on plaintiff's claim of disparate treatment discrimination to the extent that claim is based on defendant's conduct in giving plaintiff the three options.[3]

---

[3]In addition, plaintiff and Ms. Chang did not discuss any details regarding the proposed transfer to a different position, and therefore there is no basis to infer that such a transfer would have represented a demotion or otherwise affected plaintiff's salary or benefits. Accordingly, to the extent the three options may be viewed as forcing plaintiff to accept a transfer to avoid a leave of absence or termination, such an involuntary transfer would not, by itself, constitute an adverse employment action. *See, e.g.*, *Sanchez*, 164 F.3d at 532 (transfer without change in salary and benefits was a mere
(continued...)

B.  *Termination*

Plaintiff also alleges that defendant discriminated against her based on her gender by terminating her employment because of her pregnancy.[4] For purposes of summary judgment, the Court applies the familiar *McDonnell Douglas* burden-shifting framework.[5]  *See Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1220 (10th Cir. 2007) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973)).

> Under this framework, the plaintiff must first establish a prima facie case of prohibited employment action. If the plaintiff does so, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment action. If the employer satisfies this burden, summary judgment is warranted unless the employee can show there is a genuine issue of material fact as to whether the proffered reasons are pretextual.

---

[3](...continued)
alteration of job responsibilities and therefore did not constitute an adverse employment action).

[4]Title VII prohibits discrimination based on pregnancy. *See* 42 U.S.C. § 2000e-2(a)(1) (unlawful for employer to discriminate "because of such individual's . . . sex"); 42 U.S.C. § 2000e(k) (the term "because of sex" includes because of pregnancy); *see also E.E.O.C. v. Horizon / CMS Healthcare Corp.*, 220 F.3d 1184, 1191-92 (10th Cir. 2000) (applying *McDonnell Douglas* framework in pregnancy discrimination case).

[5]The Court does not agree with plaintiff that there is direct evidence of discrimination here such that the *McDonnell Douglas* analysis is unnecessary. Plaintiff did present evidence that Ms. Chang's three options to plaintiff included termination and two other options offered because of plaintiff's pregnancy. Plaintiff, however, has not provided evidence directly establishing, without resort to inference, that Ms. Chang terminated her five days later because she was pregnant. *See, e.g.*, *Ramsey v. City and County of Denver*, 907 F.2d 1004, 1007-08 (10th Cir. 1990) (distinguishing between direct and indirect evidence). Although the three options may provide indirect evidence of discriminatory intent here, they do not serve as direct evidence of discrimination with regard to plaintiff's termination.

*Id.* (citations and quotations omitted).

In this case, defendant does not dispute that plaintiff can establish a prima facie case. Defendant argues instead that plaintiff cannot show that its legitimate, nondiscriminatory reason for plaintiff's termination—plaintiff's insubordination immediately preceding the termination—was pretextual. To that end, defendant cites evidence that one of the three options was that plaintiff would be terminated just as other employees would be; that Ms. Chang did terminate a number of other employees; that plaintiff was given the leave and transfer options for her benefit and in an attempt to allow her to keep her job; and that Ms. Chang offered plaintiff items for the baby. Defendant argues that such evidence shows that Ms. Chang did not intend to discriminate against plaintiff based on her pregnancy.

The Court concludes, however, that plaintiff has provided sufficient evidence of pretext to raise a question of fact for the jury. First, the evidence, considered in plaintiff's favor, reveals that the termination occurred only a few days after plaintiff was effectively told that she would be terminated if she rejected the leave and transfer options. Defendant has conceded that those two alternatives to termination specifically related to plaintiff's health and stress level as affected by her pregnancy. Such evidence may create an inference that the termination occurring shortly thereafter was in fact motivated by plaintiff's pregnancy. The fact that defendant may have been acting out of a concern for plaintiff's own health or interests is irrelevant if defendant took an adverse action against plaintiff because of her pregnancy.

Ms. Chang's reading of plaintiff's letter on December 20, 2004—one day before the termination—also provides evidence of pretext. On that occasion, Ms. Chang directly linked the letter, which set forth the three options and threatened a complaint of discrimination, to the health of plaintiff's unborn baby—and thus, to plaintiff's pregnancy. Moreover, Ms. Chang could not identify any reason for her decision to read the letter. Ms. Chang's seemingly arbitrary decision to conduct a public reading of a letter relating to plaintiff's future employment prospects, while referring also to plaintiff's pregnancy, provides further evidence that could link plaintiff's pregnancy to her termination the next day.

Finally, plaintiff's testimony regarding her interaction with Ms. Chang on the day of her termination conflicts with Ms. Chang's position that plaintiff was sufficiently insubordinate to warrant such an extreme employment action. Under plaintiff's version of events, Ms. Chang became agitated and raised her voice, apparently attempting to goad plaintiff into a hostile response with her repeated questions about plaintiff's attitude, while plaintiff calmly refuted that she had a bad attitude or needed the day off. Although this story is disputed in Ms. Chang's testimony, it must be accepted for purposes of summary judgment. Plaintiff has provided evidence that she was not in fact insubordinate on December 21, 2004; thus, plaintiff has provided evidence that Ms. Chang's stated reason for her termination was pretextual.

For these reasons, summary judgment is denied on plaintiff's disparate treatment claim relating to her termination.

### IV.     Retaliation

Plaintiff has also alleged that defendant terminated her employment in retaliation for her intention to file a complaint of discrimination, as stated in her letter to defendant, in violation of Title VII. Because plaintiff has not provided direct evidence that defendant terminated plaintiff for that reason, this claim too must be analyzed under the *McDonnell Douglas* framework. *See Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1176 (10th Cir. 2007).

Again, defendant does not challenge plaintiff's ability to state a prima facie case, but instead argues that plaintiff cannot establish that its stated reason for the termination was pretextual. Defendant argues that there is no evidence that Ms. Chang had any problems with plaintiff's pregnancy and that Ms. Chang stated at the December 20 company-wide meeting that she would not do anything with plaintiff's letter.

The Court concludes that plaintiff has provided sufficient evidence of pretext here. First, the termination occurred one day after Ms. Chang learned that plaintiff intended to pursue a formal discrimination claim. Although "temporal proximity alone is insufficient to raise a genuine issue of material fact concerning pretext," such evidence may be considered and combined with other evidence to create the necessary inference that the employer's asserted reason for its employment action is unworthy of belief. *See Proctor v. United Parcel Service*, 502 F.3d 1200, 1213 & n. 6 (10th Cir. 2007); *see also Annett v. University of Kan.*, 371 F.3d 1233, 1240-41 (10th Cir. 2004) (rejecting

argument that "very close" temporal proximity may establish pretext by itself). In this case, a reasonable jury could infer from Ms. Chang's decision to read the letter aloud in a company-wide meeting (for no reason that Ms. Chang could identify) that Ms. Chang was displeased with the letter and intended to punish or humiliate plaintiff in retaliation for her allegation of discrimination. In addition, plaintiff has provided evidence that she was not in fact insubordinate before she was terminated. That evidence, together with the extreme temporal proximity between plaintiff's complaint of discrimination and her termination, provide sufficient evidence that defendant's stated reason for the termination is unworthy of belief. Accordingly, plaintiff has satisfied her burden to show pretext, and summary judgment is denied.

### V.     Tort of Outrage

Plaintiff's state-law outrage claim is based solely on Ms. Chang's reading of plaintiff's letter in a company-wide meeting involving most of defendant's employees. The Kansas Supreme Court has set forth the elements of the tort of outrage under Kansas law[6] as follows:

> To prove the tort of outrage, a litigant must show: (1) the conduct

---

[6]The Court applies the forum state's choice of law rules to determine which state's substantive law governs plaintiff's outrage claim. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In Kansas, tort actions are governed by the law of the state in which the tort occurred. *See Ling v. Jan's Liquors*, 237 Kan. 629, 634-35, 703 P.2d 731, 735 (1985). Because plaintiff's alleged tort occurred in Kansas, the Court applies Kansas substantive law regarding the tort of outrage.

13

> of the defendant was intentional or in reckless disregard of the plaintiff; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the defendant's conduct and the plaintiff's mental distress; and (4) the plaintiff's mental distress was extreme and severe.
>
> The tort of outrage has two threshold requirements that the district court must determine: (1) whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) whether the emotional distress suffered by the plaintiff was of such extreme degree the law must intervene because the distress inflicted was so severe that no reasonable person should be expected to endure it. In order for conduct to be deemed sufficient to support the tort of outrage, it must be so outrageous in character and so extreme in degree as to go beyond the bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society.

*Miller v. Sloan, Listrom, Eisenbarth, Sloan and Glassman*, 267 Kan. 245, 257, 978 P.2d 922, 930 (1999) (citations omitted).

The Court concludes that plaintiff has failed to meet either threshold requirement to establish the tort of outrage under Kansas law. First, plaintiff has not established that Ms. Chang's reading of the letter in front of other employees was so extreme and outrageous "as to go beyond the bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society." *See id.* While Ms. Chang's act might have embarrassed or angered plaintiff, such conduct does not meet the high standard required to support this cause of action. As the Kansas Supreme Court has noted:

> It should be understood that liability does not arise [for outrage] from mere insults, indignities, threats, annoyances, petty expressions, or other trivialities. Members of the public are necessarily expected and

14

> required to be hardened to a certain amount of criticism, rough language and to occasional acts and words that are definitely inconsiderate and unkind. The law should not intervene where someone's feelings merely are hurt.

*Roberts v. Saylor*, 230 Kan. 289, 293, 637 P.2d 1175, 1179 (1981). The Court concludes, as a matter of law, that the reading of the letter was not sufficiently extreme and outrageous, and defendant is therefore entitled to summary judgment on this claim.

Defendant is also entitled to summary judgment on plaintiff's outrage claim on the alternative basis that plaintiff has failed to provide any evidence of extreme emotional distress "so severe that no reasonable person should be expected to endure it." *See Miller*, 267 Kan. at 257, 978 P.2d at 930. Plaintiff failed to address this basis for summary judgment in her brief. Plaintiff also failed to cite to any evidence that she did suffer emotional distress from the reading of the letter, other than Ms. Chang's testimony that plaintiff appeared to get "mad" during the discussion of the letter in the company-wide meeting. Plaintiff also testified that she did not seek medical treatment for any emotional distress after Ms. Chang read the letter (her visit to the doctor on December 17 preceded the reading). In the absence of any evidence of extreme and severe emotional distress suffered by plaintiff as a result of Ms. Chang's reading of her letter, plaintiff's outrage claim cannot survive.

IT IS THEREFORE ORDERED BY THE COURT THAT defendant's motion for summary judgment (Doc. # 22) is **granted in part and denied in part**. The motion

is granted with respect to plaintiff's discrimination claim to the extent that it is based on her allegation that defendant gave her three options regarding her continued employment, and with respect to plaintiff's state-law outrage claim. The motion is denied with respect to plaintiff's claims of discrimination and retaliation arising from her termination.

    IT IS SO ORDERED.

    Dated this 17th day of December, 2007, in Kansas City, Kansas.

                                      s/ John W. Lungstrum
                                      John W. Lungstrum
                                      United States District Judge